STATE of South Dakota, Plaintiff and Appellant,

v.

Steven Francis WIELGUS, Jr. and Jeanie Kristine Wielgus, Defendants and Respondents.

No. 12424.

Supreme Court of South Dakota.

May 17, 1979.

Charles L. Dorothy, Asst. State's Atty., Minnehaha County, Sioux Falls, for plaintiff and appellant; William J. Janklow, Atty. Gen., Pierre, on brief.

Robert J. Burns of Burns & Hagen, Sioux Falls, for defendant and respondent Steven Francis Wielgus, Jr.

David L. Knudson of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and respondent Jeanie Kristine Wielgus.

WOLLMAN, Chief Justice (on reassignment).

This is an appeal from an order suppressing evidence seized from defendants' apartment on June 10, 1977, pursuant to a search warrant. The state appeals. We reverse.

One of the two affidavits presented to the magistrate in support of the search warrant was executed by Officer Chris Rallis. This affidavit relates that one Larry Montileaux, who was arrested for attempting to sell marijuana on September 28, 1976, had informed the arresting officer that his supplier of marijuana was defendant Steven Wielgus. It further relates that a juvenile had informed the Sioux Falls police on September 20, 1976, that he had purchased marijuana from defendant Steven Wielgus at the Wielgus residence on three occasions during the summer of 1976. The affidavit goes on to state that in September 1976, defendant Steven Wielgus had admitted to a Sioux Falls police officer that he had sold marijuana in the past. Finally, the affidavit relates that on June 8, 1977, Bruce McCain had informed Officer Rallis that he, McCain, had been personally present and had observed defendant Steven Wielgus sell one-quarter of a pound of mar-ijuana to another individual on June 4, 1977, at the Wielgus residence in Sioux Falls. McCain also stated that he had heard Steven Wielgus say that the purchaser could purchase up to one pound of marijuana because he, Wielgus, had recently received three pounds of marijuana which was for sale.

The supplemental affidavit was executed by Officer Dennis Clauson. It relates that on June 8, 1977, Bruce McCain informed the officer that defendant Steven Wielgus, known to McCain as "Steve," was selling marijuana from his residence. McCain went on to state that Steve was the manager of the apartment complex in which defendants resided. McCain further described defendants' apartment as containing an office in the dining room, with the living quarters of the apartment being located on the second floor. The affidavit states that during the investigation of an apparently unrelated narcotics violation, Officer Clauson had had an occasion to be inside the Wielgus residence and that the description of the apartment given by McCain accurately portrayed the apartment visited by Officer Clauson.

The circuit court concluded that the information contained in the Rallis affidavit concerning the reports received in September of 1976 was too stale to establish the requisite probable cause for issuance of a search warrant. Accordingly, the trial court did not consider the information relating to the 1976 incidents and based its determination that the affidavits did not establish probable cause solely upon the information received from McCain in June of 1977.*

Bearing in mind the general rule that every reasonable inference possible should be drawn to support the determination of probable cause made by the magistrate, *State v. Kaseman*, S.D., 273 N.W.2d

---

* At the suppression hearing defendants were allowed to attack the truthfulness of the affidavits based on allegations that the documents contained statements the affiants knew to be false. The trial court specifically found no such statements in the affidavits. The state argues that affidavits may not be impeached with information not contained in the documents. This question has recently been resolved. See *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667; *State v. Hibbard*, S.D., 273 N.W.2d 172.

716, we conclude that the magistrate could properly have inferred that defendants were engaged in an ongoing series of drug transactions. Taken together, the admission made by defendant Steven Wielgus to the police officer in 1976 that he had in the past been engaged in selling marijuana, the statements by various informants that defendant Steven Wielgus had sold these informants marijuana, and the very fresh information that Steven Wielgus had recently received three pounds of marijuana that was for sale, provide an adequate evidentiary basis from which the magistrate could reasonably conclude that one or more of the Wielguses had been involved in the sale of contraband and that such activity was probably continuing. As stated by the Court of Appeals of Maryland in *Peterson v. State*, 281 Md. 309, 379 A.2d 164,

> In other words, the facts were such that a reasonably discreet and prudent man would be led to believe that the apartment contained unlawful drugs. By its nature, traffic in illegal drugs is ordinarily a regenerating activity, and there was clear indication here that the activity was continual, a course of conduct regularly followed over a protracted time. 281 Md. at 321, 379 A.2d at 170.

See also *United States v. Johnson*, 10 Cir., 461 F.2d 285; *United States v. Steeves*, 8 Cir., 525 F.2d 33; *Andresen v. Maryland*, 427 U.S. 463, 478, 96 S.Ct. 2737, 2747, 49 L.Ed.2d 627, 641 n. 9. As we said in *State v. Roth*, S.D., 269 N.W.2d 808:

> The likelihood that criminal activity is of a continuing nature rather than singular in occurrence depends upon the facts and circumstances of each case. We think that a fair, commonsense reading of the two affidavits presented sufficient evidence from which the magistrate could conclude that appellant was engaged in an ongoing series of drug transactions. 269 N.W.2d at 812.

Having concluded that it was error to disregard the portions of the affidavit somewhat more remote in time than the McCain statements, we turn now to an examination of the reliability of the information presented to the officers by informant McCain. Defendants assert, and the circuit court found, that the information provided by McCain does not satisfy the two prongs of the test governing the sufficiency of affidavits for search warrants established by the United States Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. In addressing the requirements of this test we said in *State v. Roth*, supra:

> The *Aguilar* test requires a showing of the underlying circumstances from which it can be determined that the informant knows whereof he speaks and a showing that the informant is a person who can be believed. As the Wisconsin Supreme Court has stated, 'Both prongs of the *Aguilar* test stated above go to the informant's reliability; the first to his informational reliability or credibility, and the second to his observational reliability.' *Rainey v. State*, 74 Wis.2d 189, 197, 246 N.W.2d 529, 532. 269 N.W.2d at 811.

Defendants concede that the second prong of this test, observational reliability, is satisfied in the present case via the verification by Officer Clauson concerning the description of the Wielgus apartment. Defendants argue, however, that the affidavit contains no information concerning McCain's credibility and that therefore the information he gave concerning the existence of marijuana at the Wielgus apartment must be disregarded. We do not agree.

■ As previously discussed, the affidavits should be read together in a commonsense manner. According to the Rallis affidavit, informant McCain was under investigation concerning a misdemeanor marijuana possession charge at the time the statements were made to the officers. McCain informed Officer Rallis that he had been personally present and had observed Steven Wielgus sell one-fourth of a pound of marijuana to a third party on June 4, 1977, at the Wielgus residence. SDCL 22–42–11 provides: "Any person who inhabits a room knowing that any controlled drug or substance is being illegally stored or used

therein, is guilty of a Class 1 misdemeanor." What was said in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723, is applicable here:

> Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct. 403 U.S. at 583, 91 S.Ct. at 2082, 29 L.Ed.2d at 734 (plurality opinion).

See also *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242; *State v. Roth*, supra.

Here, as in *Roth*, supra, the named informant made statements against his penal interests. We do not believe that such statements are lightly made. When made, they lend sufficient credibility to the declarant so as to allow a magistrate to base a finding of probable cause to issue a search warrant on that person's disclosures.

Defendants argue that McCain had a motive to falsify information to the police in order to ingratiate himself with the officers. That argument cuts two ways. Assuming McCain had reason to please the officers, to supply them with false or misleading information would surely not accomplish that goal. There is no reason to believe that McCain's motive to falsify was stronger than his motive to be genuinely helpful.

In addition to the fact of McCain's statements against his penal interests, the magistrate had sufficient information before him to justify a conclusion that defendant Steven Wielgus had a deserved reputation for dealing in controlled substances, a factor that bolsters the reliability of McCain's information. *United States v. Harris*, supra; *State v. Kissner*, S.D., 252 N.W.2d 330; cf. *State v. Nollsch*, S.D., 273 N.W.2d 732.

Accordingly, the order to suppress the evidence gathered under the search warrant is reversed and the case is remanded for trial.

All the Justices concur.